IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| **ERSKIN RIVERS,** § | |
| **TDCJ No. 01369061,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:18-cv-00120-M-BP |
| § | |
| **KEVIN SCHIWART,** § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendant Kevin Schiwart's Motion to Dismiss (ECF No. 10) filed October 10, 2018 and Plaintiff Erskin Rivers' Response (ECF No. 12) filed October 29, 2018. On August 6, 2018, this case was referred to the undersigned for pretrial management pursuant to Special Order No. 3-251. (*See* ECF No. 1). After considering the pleadings and applicable law, the undersigned **RECOMMENDS** that Chief United States District Judge Barbara M. G. Lynn **GRANT in part** and **DENY in part** Defendant's Motion to Dismiss (ECF No.10).

**BACKGROUND**

Plaintiff Erskin Rivers ("Rivers"), an inmate confined in the James V. Allred Unit of the Texas Department of Criminal Justice ("TDCJ") in Iowa Park, Texas, brings this action *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983. The TDCJ employed Defendant Captain Kevin Schiwart ("Schiwart") at all times relevant to this suit. (ECF No. 3). Rivers alleges that Schiwart authorized the use of excessive force against him and other inmates. (*Id.*).

According to Rivers' complaint, a fight broke out between inmates (the "fighting inmates") in the "chow hall." (*Id.* at 4). To control the fight, correctional officers gassed and removed the

fighting inmates from the chow hall. (*Id.* at 4). After the fighting inmates fled or were removed, officers fired a riot gun at Rivers and the other inmates who remained in the chow hall (collectively, the "remaining inmates"), even though they were "waiting for [the officers] to finish taking care of their business with the . . . inmates that were fighting." (*Id.*). According to Rivers, the inmates were ordered to get on the ground, but even after they complied with the order, and without provocation, the officers fired a canister of gas into the chow hall. (*Id.* at 5). For no apparent reason, the officers also fired the riot gun and another cannister of gas toward the remaining inmates. (*Id.*). Rivers alleges that the officers who gassed and fired the riot gun at them acted on Schiwart's direct orders. (*Id.*). Rivers asks the Court to award him $100,000 in compensatory damages and $100,000 in punitive damages because Schiwart acted with "evil intent" and reckless indifference to his rights. (*Id.* at 4, 6).

To clarify Rivers' claims and injuries allegedly sustained during the incident, the Court sent Rivers a questionnaire seeking additional information. (ECF No. 7). In his response, Rivers claims that because of the incident, he sustained bruises on his "arm and leg," has vertigo when he tilts his head, and has "nightmares like crazy." (*Id.* at 4). Despite these injuries, Rivers did not seek medical attention. (*Id.* at 5).

Schiwart filed the Motion to Dismiss (ECF No. 10) based on Federal Rule of Civil Procedure 12(b)(1), Rule 12(b)(6), and qualified immunity. Rivers responded. The Motion is now ripe for disposition.

## LEGAL STANDARD

**I.     Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) permits a party to move for dismissal of a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts

2

of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). If a court lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3). In determining whether subject matter jurisdiction exists, a court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). "The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lowe v. ViewPoint Bank*, 972 F. Supp. 2d 947, 953 (N.D. Tex. 2013) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). When considering a Rule 12(b)(1) motion, the court may consider evidence beyond the pleadings. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). A dismissal under Rule 12(b)(1) is without prejudice because it "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Ramming*, 281 F.3d at 161.

## II.     Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. The Rules require that each claim contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming*, 281 F.3d at 161 (citing *Hitt*, 561 F.2d at 608). It is federal policy to decide cases on the merits rather than technicalities, and thus when possible the Fifth Circuit has recommended that suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976) (vacating and remanding a Rule 12(c) dismissal with instructions to the district court to dismiss without, instead of with, prejudice). As a result, courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings. *Great Plains Tr. Co.*, 313 F.3d at 329; *see In re Online Travel Co. (OTC) Hotel Booking Antitrust*

*Litig.*, 997 F. Supp. 2d 526, 548 (N.D. Tex. 2014) (dismissing for failure to state a claim without prejudice, as dismissing with prejudice would be "too harsh a sanction").

A *pro se* plaintiff's pleadings are liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* However, if the court determines that a plaintiff has pleaded his or her best case, a district court does not err in dismissing a *pro se* complaint with prejudice. *Jones v. Greninger*, 188 F.3d 322, 326–27 (5th Cir. 1999) (citing *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)).

To aid the court in determining whether it should dismiss an *in forma pauperis* complaint, the Fifth Circuit has approved the use of questionnaires and evidentiary hearings. *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985). Responses to these questionnaires and hearings become part of the pleadings. *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996). Accordingly, the Court has reviewed Rivers' Original Complaint (ECF No. 3) and Verified Responses to the Court's Questionnaire (ECF No. 7).

## ANALYSIS

Schiwart moved to dismiss the complaint because: (1) Eleventh Amendment immunity bars Rivers' claims to the extent the claims were made against Schiwart in his official capacity; (2) Rivers' allegations of excessive force do not state a claim upon which relief may be granted against Schiwart; and (3) qualified immunity bars Rivers' claims to the extent they were made against Schiwart in his individual capacity. (*See* ECF No. 10).

**I.     Eleventh Amendment Immunity bars Rivers' claims against Schiwart in his official capacity.**

Under the Eleventh Amendment, states may not be sued in federal court unless they unequivocally consent to suit or unless Congress, pursuant to a valid exercise of power,

5

unequivocally expresses its intent to abrogate immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984). Eleventh Amendment immunity extends to state agencies and to state officials if the relief sought would operate against the state. *Id.* at 101.

Rivers clarifies in his response that he is suing Schiwart in his individual and official capacities. (ECF No. 12 at 1). Schiwart is entitled to Eleventh Amendment immunity from the claims against him in his official capacity because "the state is the real, substantial party in interest." *Pennhurst*, 465 U.S. at 101; *Union Pac. R. Co. v. Louisiana Pub. Serv. Comm'n*, 662 F.3d 336, 340 n.3 (5th Cir. 2011) (per curiam) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989))).

But there are three possible exceptions to Eleventh Amendment immunity: (1) for claims seeking injunctive or declaratory relief against a state official under *Ex Parte Young*, 209 U.S. 123 (1908); (2) a state's waiver or consent, *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 267 (1997); and (3) Congress's abrogation of the state's immunity through section 5 of the Fourteenth Amendment, *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 364 (2001).

*Young* only permits "prospective injunctive relief to prevent a continuing violation of federal law" against state officers in their official capacities and does not allow damages or other retrospective relief. *Green v. Mansour*, 474 U.S. 64, 68 (1985). Rivers has not prayed for injunctive relief, only monetary damages. Thus, the exception to Eleventh Amendment immunity under *Ex Parte Young* is unavailable to him. *Clay v. Texas Women's Univ.*, 728 F.2d 714, 716 (5th Cir. 1984) ("An award by a federal court of retrospective relief, *i.e.*, damages, payable from the state treasury, is prohibited by the eleventh amendment even though the suit names a state official as the defendant.").

6

Further, Rivers has not directed the Court to authority establishing that the state of Texas has waived immunity or consented to suit for claims alleged under 42 U.S.C. § 1983. The law is clear that Texas has not waived immunity or consented to suit under § 1983. *See, e.g.*, *Quern v. Jordan*, 440 U.S. 332, 338 n.7 (1979) ("§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States . . . ."); *Baldwin v. Univ. of Texas Med. Branch at Galveston*, 945 F. Supp. 1022, 1030 (S.D. Tex. 1996) ("Congress did not abrogate the states' Eleventh Amendment immunity by enacting 42 U.S.C. §§ 1981, 1983, and 1985."). Moreover, although state officials literally are persons, they are not considered persons for § 1983 purposes when acting in their official capacities. *Will*, 491 U.S. at 71. Thus, Schiwart is not susceptible to suit in his official capacity under § 1983. Finally, Rivers has not advanced any theory or directed the Court to any authority establishing that Congress has abrogated the state of Texas' immunity. Accordingly, Rivers' claim against Schiwart in his official capacity should be dismissed without prejudice for lack of subject matter jurisdiction.

**II.     Rivers has stated an excessive force claim against Schiwart in his individual capacity.**

A prisoner's claim of excessive force under 42 U.S.C. § 1983 is a claim that the defendant violated the Cruel and Unusual Punishments Clause of the Eighth Amendment to the Constitution. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). In deciding whether a defendant's actions violated a plaintiff's constitutional rights, the "core judicial inquiry" in an excessive force claim is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 6–7). Accordingly, an excessive force inquiry has both an objective component focusing on the nature of the force applied

7

and "whether it was nontrivial" and a subjective component focusing on the mental status of the wrongdoer. *See id.* at 39 (citing *Hudson*, 503 U.S. at 7–8).

The Supreme Court set out five factors for courts to evaluate in an excessive force claim: (1) "the extent of injury suffered," (2) "the need for application of force," (3) "the relationship between that need and the amount of force used," (4) "the threat reasonably perceived by the responsible officials," and (5) "any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (internal quotation marks omitted). Consideration of all five factors is not necessary, and each case should be judged on its own facts. *Benoit v. Bordelon*, 596 F. App'x 264, 268 (5th Cir. 2015) (unpublished). However, a court can err by not considering any of the factors or not considering factors for which there is relevant evidence. *Id.* Thus, the amount of force that is constitutional "must be judged by the context in which that force is employed." *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996).

To support an excessive force claim, a plaintiff must demonstrate that the injury was more than a *de minimis* physical injury, but "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action," and *de minimis* uses of physical force can only support an excessive force claim if they were of a sort "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

The injuries Rivers allegedly sustained in the incident were bruises on his "arm and leg," vertigo when he tilts his head, and "nightmares." (ECF No. 7 at 4). Rivers provides no detail in either his complaint or questionnaire response of the extent of these injuries. Admittedly, he did not seek medical attention for them. (*Id.* at 5). At this stage of the proceedings, it would be difficult

for the Court to conclude whether Rivers' injuries are more than *de minimis*. *Comeaux v. Sutton*, 496 F. App'x 368, 371 (5th Cir. 2012) (per curiam) (agreeing with the district court that plaintiff's abrasions on his elbow and leg were not *per se de minimis* before proceeding to evaluate the remaining *Hudson* factors). But as explained by the Supreme Court, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins*, 559 U.S. at 38. Thus, the Court must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7). "When there is no legitimate purpose for the officers' conduct, malicious and sadistic intent may be inferred from their conduct alone." *Picaso v. Wisdon*, No. 3:12-CV-1305-L BH, 2014 WL 229313, at *4 (N.D. Tex. Jan. 21, 2014) (citing *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1152 (10th Cir. 2006)).

Schiwart contends that the officers' use of force following the fight was necessary to secure the chow hall, protect other inmates, and prevent harm to other TDCJ personnel. (ECF No. 10 at 6). But Rivers' allegations paint another picture. He alleges that most of the fighting inmates ran out of the chow hall after they were gassed initially, and approximately eleven other inmates remained in the chow hall. (ECF No. 3 at 4). After the fighting inmates ran out, the doors to the chow hall were closed, and for "no reason whatsoever," officers fired a riot gun through a window at the remaining inmates. (*Id.* at 5). Next, the officers ordered them to get onto the ground. (*Id.*). According to Rivers, the inmates fully complied with the officers' order. (*Id.*). Nevertheless, officers fired another cannister of gas into the chow hall. (*Id.*).

Schiwart contends, citing to Rivers' Step 1 Offender Grievance Form ("Form") (ECF No. 3 at 10), that because Rivers and other inmates did not immediately respond to the officers' order to get on the floor, but instead argued with Schiwart, that the force applied was reasonable and

necessary and was administered in an appropriate manner to subdue them. (ECF No. 10 at 7). Even if the Court were to find that Rivers' Form, which was not referred to in the complaint, was part of the pleadings, Rivers' statements made in the Form do not contradict the allegations in the complaint that officers fired a cannister of gas into the chow hall after the inmates were already on the ground, and officers, unprovoked, fired the riot gun and gassed them again. (*Id.*). Although there is some discrepancy between Rivers' statements in the Form and the complaint as to when the riot gun was fired and when the order to get onto the ground was given, Rivers' other statements are consistent with the allegations in the complaint and questionnaire response. Thus, when taking Rivers' allegations as true, firing multiple cannisters of gas and another round of the riot gun into to the chow hall after the inmates were subdued are activities that were not done in a good-faith effort to maintain or restore discipline. *See Wilson v. Rheams*, 494 F. App'x 469, 470 (5th Cir. 2012) (per curiam) (concluding that plaintiff's allegations stated a claim of excessive force when an officer, unprovoked, maliciously applied unnecessary force). Accordingly, Rivers has stated a claim for excessive force against Schiwart in his official capacity.

### III. Schiwart's qualified immunity defense should be denied without prejudice.

The doctrine of qualified immunity protects government officials from suit and liability for civil damages if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Once an official asserts qualified immunity, the burden shifts to the plaintiff to rebut the defense. *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017).

"The issue of qualified immunity is often resolved on summary judgment, but the Court may also consider the issue in a motion to dismiss." *Gill v. Delvin*, 867 F. Supp. 2d 849, 855 (N.D. Tex. 2012) (citing *Iqbal*, 556 U.S. at 677–78); *see also Brown v. City of Houston*, 297 F. Supp. 3d 748, 772–73 (S.D. Tex. 2017) (analyzing cases to determine that the issue of qualified immunity may be considered on a motion to dismiss). However, the Supreme Court has held that a plaintiff is not required to anticipate a qualified immunity defense by providing greater specificity in his initial pleading. *Crawford-El v. Britton*, 523 U.S. 574, 595 (1998); *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995) (en banc) ("[W]e will no longer insist that a plaintiff fully anticipate the defense in his complaint at the risk of dismissal under Rule 12.").

Courts in this district have denied without prejudice motions to dismiss on qualified immunity grounds when a Rule 12(b)(6) motion is filed before the defendant has answered and pleaded the defense. *See, e.g.*, *Guilliot v. Harmon*, No. 3:17-CV-2701-M-BN, 2018 WL 4084265, at *10 (N.D. Tex. July 25, 2018), *adopted by*, No. 3:17-CV-2701-M-BN, 2018 WL 4075761 (N.D. Tex. Aug. 27, 2018); *Thomas v. State*, 294 F. Supp. 3d 576, 606–07 (N.D. Tex. 2018), *adopted by*, No. 3:17-CV-0348-N-BH, 2018 WL 1254926 (N.D. Tex. Mar. 12, 2018), *appeal dismissed*, No. 18-10448, 2018 WL 4943750 (5th Cir. Sept. 12, 2018). The undersigned adopts the general practice for such consent cases and cases referred for pretrial management that defendants either file a motion for summary judgment asserting a qualified immunity defense or file a motion for summary judgment after asserting qualified immunity in a responsive pleading. Before taking such a motion under consideration, the undersigned also requires that a plaintiff be given an opportunity to move for leave to conduct limited discovery that is narrowly tailored to uncover facts that the Court needs to rule on that defense. Defendant's motion for dismissal based on qualified immunity therefore should be denied without prejudice to his right to reassert it in a motion for summary

11

judgment.

## CONCLUSION

After considering the pleadings and applicable law, the undersigned **RECOMMENDS** that Chief Judge Lynn **GRANT** Defendant's Rule 12(b)(1) Motion to Dismiss and **DISMISS WITHOUT PREJUDICE** Rivers' claims against Schiwart in his official capacity for lack of subject matter jurisdiction; **DENY** Defendant's Rule 12(b)(6) Motion to Dismiss as to Rivers' excessive force claims against Schiwart in his individual capacity; and **DENY WITHOUT PREJUDICE** Defendant's Rule 12(b)(6) Motion to Dismiss based on qualified immunity subject to his right to reassert it in a motion for summary judgment.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** March 14, 2019.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE