IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| ERSKIN RIVERS,<br>TDCJ No. 01369061, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 7:18-cv-00120-M-BP |
| KEVIN SCHIWART, | § § § | |
| Defendant. | § § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are Defendant Kevin Schiwart's Motion for Summary Judgment, Brief in Support, and Appendix, ECF Nos. 27-29, filed on July 8, 2019; and Plaintiff Erskin Rivers's Response and Brief in Support, ECF Nos. 31-32, filed on August 29, 2019. Based upon a full review of the relevant pleadings on file and applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Barbara M. G. Lynn **GRANT** Defendant's Motion for Summary Judgment, ECF No. 27.

### I.     BACKGROUND

Plaintiff Erskin Rivers ("Rivers"), an inmate formerly confined in the James V. Allred Unit of the Texas Department of Criminal Justice ("TDCJ") in Iowa Park, Texas, brings this action *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983 against Defendant Kevin Schiwart ("Schiwart"). ECF No. 3 at 3–6. Schiwart was a captain at the Allred Unit at all times relevant to this suit. ECF No. 3. In his Complaint, Rivers alleges that Schiwart violated his constitutional rights by use of excessive force. *Id.*

The case arises from an incident at a "chow hall" in the Allred Unit on April 10, 2018. On that day, a fight broke out among certain inmates (the "fighting inmates") in the chow hall. *Id.* at

4. To control the fight, correctional officers gassed and removed the fighting inmates from the area. *Id.* After the fighting inmates fled or were removed, officers fired a riot gun at the other inmates who remained in the chow hall (collectively, the "remaining inmates"), including Rivers, and used gas against them. The parties dispute what happened leading up to the use of the riot gun and chemical agents.

Schiwart contends that the officers first ordered the remaining inmates to move away from the chow hall's windows and lie on the ground. ECF No. 28 at 8. The officers then warned them multiple times that chemical agents would be used if they failed to follow orders, but the remaining inmates, including Rivers, did not obey. *Id.* When the remaining inmates refused to get on the ground, Sergeant Banda ("Banda") administered the first round of chemical agents. *Id.* A second round of chemical agents was applied when the remaining inmates failed to follow Lieutenant Sims's ("Sims") order to get on the ground. *Id.* at 9. When some of the remaining inmates still refused to comply, Sims administered a final chemical agent grenade. *Id.* Once the remaining inmates had all gotten on the ground, the officers applied hand restraints to them and escorted them outside. *Id.*

According to Rivers, the inmates were ordered to get on the ground, but even after they complied with the order, and without provocation, the officers fired a canister of gas into the chow hall. ECF No. 3 at 5. He claims the officers fired the riot gun and another cannister of gas toward the remaining inmates for no apparent reason. *Id.* Rivers alleges that the officers who gassed and fired the riot gun at them acted on Schiwart's direct orders. *Id.* Rivers asks the Court to award him $100,000 in compensatory damages and $100,000 in punitive damages because Schiwart acted with "evil intent" and reckless indifference to his rights. *Id.* at 4, 6. Rivers claims that he sustained

bruises on his "arm and leg," has vertigo when he tilts his head to the left, and has "nightmares like crazy." *Id.* at 4. Despite these alleged injuries, Rivers did not seek medical attention. *Id.* at 5.

In support of his Motion, Schiwart attached Rivers's medical records from October 1, 2017 to September 25, 2018, and TDCJ documents including Use of Force report and other documents regarding the incident at issue. ECF No. 29. In support of his response to the Motion, Rivers attached the TDCJ Surveillance Video of the incident; the statement of his fellow inmate, Joshua Lane; the addresses of three additional witnesses; a copy of what appears to be a part of Defendant's Responses to Interrogatories; and a part of a response to a grievance form. ECF No. 32-1.

## II.   LEGAL STANDARD

### A.   Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Slaughter v. S. Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law." *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment would be improper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering

3

depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Merely colorable evidence or evidence not significantly probative will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249–50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Id.* at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

The Court must view summary judgment evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 242–43. The movant's motion for summary judgment will be granted only if he meets his burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed. R. Civ. P. 56; *Duckett*, 950 F.2d at 276.

Courts must employ summary judgment cautiously. *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980). Particularly in cases brought by prisoners proceeding *pro se*, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Id.* at 311; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that a *pro se* plaintiff's pleadings should be liberally construed). Courts should consider that "[i]ndigent prisoners are hampered in their access to the proof necessary to ward off summary judgment." *Murrell*, 615 F.2d at 310.

**B.** ***Pro Se* Standard**

"*Pro se* plaintiffs are held to a less stringent pleading standard than documents drafted by attorneys and are entitled to a liberal construction, allowing all reasonable inferences that can be drawn from their pleadings." *Morgan v. Fed. Exp. Corp.*, 114 F. Supp. 3d 434, 436 (S.D. Tex. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 521 (1972)). Nevertheless, *pro se* plaintiffs must "still comply with the rules of civil procedure and make arguments capable of withstanding summary judgment." *Ogbodiegwu v. Wackenhut Corr. Corp.*, 202 F.3d 265 (5th Cir. 1999) (citing *Grant v. Cellular*, 59 F.3d 523, 524 (5th Cir. 1995); *Haines*, 404 U.S. at 520). And "while courts liberally construe the pleadings of *pro se* litigants, courts are not obligated under Federal Rule of Civil Procedure 56 [ ] to search the record to find evidence supporting a party's opposition to a summary judgment motion." *Murray v. Int'l Bus. Machines Corp.*, No. 3:14-CV-1809-M-BF, 2015 WL 4635776, at *1 (N.D. Tex. Aug. 4, 2015) (citations omitted).

**III. ANALYSIS**

Schiwart argues that he is entitled to summary judgment on five grounds: (1) Rivers's excessive force claim against him fails because he was not personally involved in the events that allegedly injured Rivers; (2) Rivers failed to plead or prove a claim of supervisory liability against

him; (3) Rivers did not raise a fact issue on whether he acted maliciously and sadistically for the very purpose of causing harm; (4) he is entitled to qualified immunity; and (5) Rivers's claims for compensatory and punitive damages are barred by the Prison Litigation Reform Act ("PLRA").

### A. Personal Involvement

"A supervisory official may be held liable under § 1983 only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Texas Dept. of Protective & Regulatory Services*, 537 F.3d 404, 435 (5th Cir. 2008) (citing *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996)). Schiwart argues that he was not personally involved in the actions that allegedly injured Rivers. He asserts that he did not order the remaining inmates to lie on the ground. ECF No. 28 at 12. Further, he points to witness statements indicating that Sims gave orders to use chemical agents, not Schiwart. *Id.* at 13. He also asserts that Sims and Banda administered the chemical agents, and his only involvement in the incident was identifying the remaining inmates following the use of force. *Id.*

Rivers responds that Schiwart was personally involved in the constitutional violations alleged because he was present at the scene and "was able to state who fired which gun." ECF No. 32 at 7. Rivers also argues that Schiwart ordered chemical agents be deployed, as supported by Schiwart's statements that he would "f--- up everyone's day" and that he was "'pissed' that he [would] have to do 'all that paperwork.'" *Id.* at 8.

Rivers failed to offer summary judgment evidence to prove that Schiwart was personally involved in the incident such that he could be held liable. The summary judgment evidence does not show that Schiwart authorized the use of force against Rivers and the other remaining inmates. The mere fact that Schiwart was "at the scene" and could "state who fired which gun" does not equate with personal involvement. Nor does Schiwart's alleged statements recounted by Rivers

6

necessarily indicate that he gave the order to deploy chemical agents. The summary judgment evidence offered by Schiwart shows that Sims ordered the use of chemical agents against the remaining inmates and that Banda and Sims administered the chemical agents. ECF No. 29 at 70, 74, 75. Rivers offers no evidence to raise a disputed issue of material fact that the use of force occurred at Schiwart's personal direction. Similarly, Rivers has offered no evidence to prove that Schiwart implemented or promoted a policy that caused Rivers's alleged injuries or otherwise violated his rights. Consequently, Schiwart is entitled to summary judgment because he was not personally involved in the actions that allegedly injured Rivers.

    **B.**    **Supervisory Liability**

*Respondeat superior* is not a valid basis for a § 1983 claim and cannot be used as a substitute for personal involvement. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978). As just discussed, individual liability can be imposed under § 1983 only if the state official played an affirmative part in the alleged misconduct or implemented policies that caused the constitutional injury. *Gates*, 537 F.3d at 435. Rivers failed to offer summary judgment evidence in support of such a claim. Accordingly, Schiwart is entitled to summary judgment on this issue.

    **C.**    **Excessive Force**

A prisoner's claim of excessive force under 42 U.S.C. § 1983 is a claim that the defendant violated the Cruel and Unusual Punishments Clause of the Eighth Amendment to the Constitution. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). When prison officials are accused of using excessive physical force in a manner that violates the Eighth Amendment, the core question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7.

To determine whether a prison official acted maliciously or sadistically to cause an unnecessary and wanton infliction of pain, courts are to consider five factors set out by the

Supreme Court: (1) "the extent of injury suffered," (2) "the need for application of force," (3) "the relationship between that need and the amount of force used," (4) "the threat reasonably perceived by the responsible officials," and (5) "any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (internal quotation marks omitted). Consideration of all five factors is not necessary, and each case should be judged on its own facts. *Benoit v. Bordelon*, 596 F. App'x 264, 268 (5th Cir. 2015). However, a court errs if it does not consider any of the factors or if it does not consider factors for which there is relevant evidence. *Id.*

### 1. The Extent of the Injury Suffered

To support an excessive force claim, the plaintiff must demonstrate that he sustained more than a *de minimis* physical injury, but "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). Not "every malevolent touch by a prison guard gives rise to a federal cause of action," and *de minimis* uses of physical force can only support an excessive force claim if it was of a sort "'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

Rivers contends that he received bruises on his arm and leg, suffers from vertigo when he tilts his head, and has nightmares as a result of the officers' use of force. ECF No. 7 at 4. However, in the medical examination conducted immediately after the incident, Elizabeth Mendiola, LVN, noted that she observed no injuries on Rivers's body, and he did not complain of any injury. ECF No. 29 at 76-77. Moreover, as he admits, Rivers never sought medical attention for his bruises or nightmares. ECF No. 32 at 5-6. Although he submitted a sick call request for treatment for dizziness, he did not keep the appointment or reschedule it. ECF No. 29 at 39, 52. Despite Rivers's

assertions to the contrary, the summary judgment evidence does not support his claim that he was injured in the incident at issue. The first *Hudson* factor therefore weighs against Rivers.

### 2. The Need for Application of Force

Rivers argues that the force used exceeded what was necessary under the circumstances. In his Response, he argues that the riot gun was fired before the order to get on the ground was given. ECF No. 32 at 5. Further, he argues that because there was no violence going on and "no threat to any officials whatsoever," the use of force was malicious and sadistic for the very purpose of causing harm. *Id.* at 8. His allegations contradict the description of the events in his Step One Offender Grievance Form. *See* ECF No. 3 at 10-11. Moreover, his allegations are not consistent with the summary judgment evidence. The exhibits to Schiwart's Motion show that the remaining inmates refused to comply with orders to lie on the ground even though they "were given multiple orders and consequences that chemical agents would be used." ECF No. 29 at 74. This evidence shows that Rivers and the other remaining inmates refused to follow orders, they posed a threat to institutional security, and the application of chemical agents was necessary to regain control of the chow hall.

Although Rivers refers to the TDCJ Surveillance Video recording of the incident in support of his response, the video evidence does not support his version of the events. In fact, the video does not clearly depict what occurred prior to or during the use of force. The video does not include an audio track, and it is difficult to determine without any explanation when the officers told the prisoners to get on the ground and whether the prisoners refused to follow orders before the riot gun was fired. Rivers offers no evidence to raise a disputed issue of material fact that force was used with any purpose other than to regain order following the remaining inmates' refusal to get

9

on the ground. Because the record shows that the officers' use of force was necessary to restore order and discipline, the second *Hudson* factor weighs against Rivers.

### 3. Relationship Between the Need and the Amount of Force Used

As noted above, the summary judgment evidence of Rivers's post-incident medical examination does not raise a fact issue that Rivers suffered injury as a result of the use of force. At most, that evidence shows a *de minimis* injury. This supports a conclusion that the force applied was reasonable. *Whitley*, 475 U.S. at 321 (citations omitted) (courts may look at seriousness of injury to determine "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occurred."). The Surveillance Video does not depict malicious or sadistic actions toward any of the inmates. Nor does Rivers suggest what lesser type of force would have been effective under these circumstances. Accordingly, this factor weighs against Rivers.

### 4. The Threat Reasonably Perceived by the Responsible Officials

Schiwart argues that given the remaining inmates' noncompliance with orders after the fight had occurred, it was reasonable for the officers to think that the remaining inmates would continue to be noncompliant and that force was necessary to regain control of the chow hall. ECF No. 28 at 18. While a single inmate's noncompliance may not have posed an immediate threat, the noncompliance of twelve inmates following a fight involving other inmates could have led the officers to reasonably believe that use of force was necessary. Because Rivers has not raised a genuine issue of material fact on this issue, the fourth *Hudson* factor also weighs against him.

### 5. The Efforts Made to Temper the Severity of a Forceful Response

Schiwart asserts that Rivers and the remaining inmates were given orders to get on the ground multiple times before chemical agents were deployed. ECF No. 28 at 18. The summary

judgment evidence in the form of the Use of Force Report supports this assertion. *See* ECF No. 29 at 74, 77, and 78. Additionally, the video shows that the inmates were not injured by the riot gun or the gas agents or that they were hit or kicked while on the floor. Instead, at the end of the incident, the officers simply held each prisoner down, applied hand restraints, picked them up, and escorted them outside. ECF No. 32-1. The fifth *Hudson* factor weighs against Rivers.

Appling the *Hudson* factors to the summary judgment evidence, the undersigned concludes that prison personnel did not act maliciously and sadistically for the very purpose of causing harm to Rivers. As a result, the summary judgment evidence does not support Rivers's claim that Schiwart violated his constitutional rights to be free from cruel and unusual punishment. Schiwart's Motion for Summary Judgment concerning Rivers's claim of excessive force should be granted.

### D.     Qualified Immunity

The doctrine of qualified immunity protects government officials from suit and "from liability for civil damages under § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Once an official asserts qualified immunity, the burden shifts to the plaintiff to rebut the defense. *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When determining whether an official can claim qualified immunity, courts engage in a two-step analysis. *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). "First, they assess whether

a statutory or constitutional right would have been violated on the facts alleged." *Id.* "Second, they determine whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* The Fifth Circuit requires that the law "so clearly and unambiguously prohibited the violative conduct that 'every reasonable official would understand that what he is doing violates the law.'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

Schiwart asserts that he is entitled to qualified immunity from Rivers's claims because he did not violate his constitutional rights, and even if he did, his actions were objectively reasonable under the circumstances. ECF No. 28 at 20. For the reasons previously explained, Rivers has not raised an issue for trial on whether Schiwart violated his constitutional rights to be free from excessive force. He likewise has not offered summary judgment evidence to show that all reasonable officials under similar circumstances would have known that Schiwart's conduct violated the law. Accordingly, Schiwart's Motion for Summary Judgment should be granted on this basis as well.

### E. Compensatory and Punitive Damages

The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). The act prevents prisoners from seeking compensatory damages "for violations of federal law where no physical injury is alleged." *Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 605 (5th Cir. 2008). Notwithstanding these limitations, a prisoner can pursue punitive or nominal damages based upon a violation of his

constitutional rights without a showing of physical injury. *See Hutchins v. McDaniels*, 512 F.3d 193, 197-98 (5th Cir. 2007) (per curiam). However, punitive damages may only be awarded "when the defendant's conduct is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights." *Williams v. Kaufman Cty.*, 352 F.3d 994, 1015 (5th Cir. 2003) (citations and quotation marks omitted).

To the extent Rivers seeks compensatory damages on his excessive force claim, § 1997e(e) bars his claim because he did not suffer a physical injury that was more than *de minimis*. Rivers concedes this point. ECF No. 32 at 9. Regarding his claims for punitive damages, Rivers has failed to present competent summary judgment evidence proving the "evil intent" or "callous indifference" required to obtain punitive damages. Accordingly, Schiwart is entitled to summary judgment on Rivers's claims for compensatory and punitive damages.

### IV. CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Chief Judge Lynn **GRANT** the Defendant's Motion for Summary Judgment, ECF No. 27.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual

findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed March 25, 2020.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE